UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

NICOLE W.,[1]   1:19-cv-1417-JR

                Plaintiff,

                                                          OPINION AND ORDER

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Russo, Magistrate Judge:

    Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's applications for disability insurance benefits and supplemental security income. Plaintiff asserts disability beginning January 1, 2014, due to hidradenitis suppurativa stage IV. Tr. 171, 191. After a hearing held on May 16, 2018, an Administrative Law Judge (ALJ) determined plaintiff was not disabled. Tr. 28, 13-22. Plaintiff contends the ALJ erred by: (1)

---

[1] In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Order uses the same designation for a non-governmental party's immediate family member.

rejecting plaintiff's symptom testimony; (2) failing to incorporate limitations noted by Mike Henderson, M.D.; (3) rejecting the medical opinion of John Malleis, M.D.; and (4) failing to find plaintiff meets Listing 8.06.

A.     Plaintiff's Testimony

On July 20, 2016, plaintiff indicated she has large boils, "open wounds deep in the flesh, causing horrible pain" when lifting, reaching, or moving her arms.  Tr. 216.  She described unbearable pain when walking, moving, laying, sitting, leaning forward, or shifting weight.  Id.  Plaintiff explained she is a "shut-in and recluse" who doesn't want to engage with people "out of fear of hurting herself even more."  Tr. 221.  Plaintiff described the pain as so excruciating "it makes everything feel impossible to accomplish."  Id. Plaintiff concluded the large boil-like abscesses cause such excruciating pain it makes her "want to hide from the world just so I don't have to explain why I walk funny or why I smell of rotting flesh … I am a prisoner of my own skin."  Tr. 223.

At the May 2018 hearing, plaintiff testified her disease causes giant abscesses in her groin, armpits, and under her breasts.  She stated the disease makes it very difficult to physically move and she "can't really hardly function most of the time because I can't do things for myself because the pain is too much."  Tr. 35.  Plaintiff stated she "can't do anything with her kids."  Id.  Plaintiff also stated she can't remember anything because her medication for fibromyalgia makes her "foggy."  Tr. 37-38.  Plaintiff stated she suffers such fatigue that she is in bed 12 hours per day. Tr. 38.

The ALJ found plaintiff's statements regarding the limiting effects of her pain inconsistent with her medical records which indicated no medical issues for a significant period after her alleged onset date.  The ALJ also noted that plaintiff's severe symptoms occurred during a time

span plaintiff was not following her prescribed course of treatment. Tr. 17-18. As noted above, plaintiff asserts disability beginning January 1, 2014. The medical record in this case barely mention plaintiff's hidradenitis suppurativa or any related complications between December 2013 to May 2016. Tr. 255-385. While plaintiff generally asserts "[t]here is no point in the medical record when plaintiff was free of severe symptoms," she does not explain this lack of record support for any treatment for over two years during which time she allegedly suffered disabling symptoms. See Fair v. Bowen, 885 F.2d 597, 603–04 (9th Cir. 1989) (unexplained, or inadequately explained failure to seek treatment and failure to follow a prescribed course of treatment can constitute clear and convincing reasons for discounting a claimant's credibility regarding his or her symptoms). On multiple occasions after May 2016, providers noted that plaintiff was not taking her prescribed medications. See, e.g., Tr. 388 (minimizing medications while breast feeding); Tr. 398 (plaintiff not in favor of using biologics); Tr. 401 (declines full skin exam); Tr. 402 (not interested in Humira biologic because she "read too many disturbing reports"); Tr. 540 (plaintiff went off her antibiotics and her pain worsened); Tr. 584, 576 (prescribed tetracycline on February 15, 2018 but had not started tetracycline by March 6, 2018).

      The ALJ also noted plaintiff exhibited symptom amplification during medical exams. Tr. 18-19. Dr. Henderson noted indications of symptom amplification. Tr. 389. Dr. Juan Castillo also noted that plaintiff's pain appears worse than what is visualized clinically or superficially. Tr. 548. A tendency to exaggerate and inconsistent statements during examinations also provides sufficient grounds to discredit plaintiff's testimony. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.2001). The ALJ did not err in rejecting plaintiff's testimony.

B.     Dr. Mike Henderson

Dr. Henderson examined plaintiff on August 31, 2016. Tr. 388. Dr. Henderson noted instances of symptom exaggeration and found no limits in standing, walking, or sitting. Tr. 390. However, Dr. Henderson found it would be reasonable to limit plaintiff "**from** working at **shoulder height or below**. She would be able to push but not with the shoulders fully flexed." Tr. 390 (emphasis added). The ALJ assigned great weight to Dr. Henderson's opinion and found plaintiff limited to "work at shoulder height or below." Tr. 19. Plaintiff argues Dr. Henderson limited plaintiff from working below shoulder height. The Commissioner suggests Dr. Henderson's report contains a typo and that he meant to limit plaintiff to working at shoulder height or below not from working below shoulder height. Dr. Henderson observed plaintiff "was able to relatively easily raise the arms up to shoulder height, yet during the rest of history and exam kept her arms directly at the sides," and that it "[seems] reasonable that she has some ability to move the arms further then she demonstrated during the history." Tr. 390. The Court agrees that from the context, the ALJ reasonably concluded that Dr. Henderson limited plaintiff to work at shoulder height or below. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). The ALJ did not err in his interpretation of Dr. Henderson's opinion.

C.     Dr. John Malleis

Plaintiff established care with Dr. Malleis on February 15, 2018 and started seeing plaintiff monthly. Tr. 417, 430. On March 16, 2018, Dr. Malleis opined plaintiff's medications cause memory and confusion issues. He further opined plaintiff can walk 5-10 steps; sit for 20 minutes at a time (sometimes only 5 minutes during flare-ups) for a total of two hours per day; stand for a total of one hour per day; needs to shift positions at will; take unscheduled breaks hourly for 20-

30 minutes; never lift more than 10 pounds; is significantly limited in repetitive reaching, handling, or fingering; requires breaks after using her hands; needs to recline during the workday; and would miss more than four days of work per month. Tr. 433-35.

The ALJ gave partial weight to Dr. Malleis' opinion. Tr. 19. The ALJ found the restrictions on sitting, standing, and walking were not supported by the medical evidence and appear to be based on plaintiff's subjective complaints. Tr. 19. The ALJ further noted that Dr. Malleis had only just began treating plaintiff at the time he rendered his opinion and found the short treating relationship coupled with the lack of functional diagnostic testing provided little evidence on which to base such expansive restrictions. Tr. 19.

The ALJ reasonably concluded Dr. Malleis' opinion was based to a large extent on plaintiff's subjective complaints of pain. As noted above, the ALJ found plaintiff lacked credibility regarding the alleged severity of her symptoms. Pain is subjective and depends on the credibility of the claimant. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Plaintiff argues the ALJ only addressed the opinion with respect to standing/sitting/walking limitations, but the ALJ specifically noted that the lack of objective findings provided little grounds on which to base Dr. Malleis' "expansive restrictions." If a treating provider's opinions are based to a large extent on plaintiff's self-reports and not on clinical evidence, and the ALJ finds the plaintiff not credible, the ALJ may discount the treating provider's opinion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2000). The ALJ did not err in rejecting Dr. Malleis' opinion.

D.   Listing 8.06

If plaintiff's impairment meets all the requirements of a "listed impairment" as well as the duration requirement, the Secretary will automatically consider the claimant disabled. 20 C.F.R. § 416.920(d). Hidradenitis suppurativa is one of the listed impairments for skin disorders. The

Page 5 – OPINION AND ORDER

requirements for this listing are "extensive skin lesion involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.06.

> The ALJ determined the:
>
> medical records in this case show only one month were the claimant presents with the "extensive bilateral axillae" in February 2018 and two months where the condition was not noted as extensive in March and April 2018…. Contemporaneous examinations from other providers in April 2018 only show right axillae…. There was also a long period immediately preceding the bilateral presentation from around February 2017 through July 2017 where the claimant elected not to follow the advised treatment due to continued nursing of her infant child…. In August 2017, the claimant stated she had been off her antibiotics since her last visit and her condition had worsened…. Therefore, the medical records fail to establish a three-month period where the claimant presents with the required criteria while continuing treatment as prescribed, and the listing is not met.

Tr. 16-17.

There is substantial evidence in the record to support the ALJ's finding. As noted above, the record shows a lack of significant flare-ups for over two years after plaintiff's alleged onset date.[2] On December 23, 2017, the medical record shows exacerbation of tender infections in the right axilla and inguinal area. Tr. 426. On February 6, 2018, the record shows a "new problem" with a rash affecting the right and left axilla. Tr. 422. On February 15, 2018, Dr. Malleis noted extensive hidradenitis suppurative in both axilla and prescribed tetracycline. Tr. 419-20. However, plaintiff had not started the tetracycline by March 6, 2018. Tr. 576. Nonetheless, Dr. Malleis did not note "extensive" rash in both axilla or the groin at that time. Tr. 574. In April 2018, Dr. Malleis again failed to note any "extensive" rash. Tr. 569.

---

[2] Plaintiff meets the insured status requirements of the Social Security Act only through December 31, 2014. Tr. 15. As noted, the medical record reflects little mention of hidradenitis suppurativa prior to May 2016. Thus, to the extent plaintiff relies on medical records from 2017 and 2018 to establish the requisite duration to show extensive skin lesion involving both axillae or the groin, it would only apply to her application for supplemental security income and not disability benefits.

To meet the listing, the skin lesions must "seriously limit" ambulation, fine and gross motor movements, or the use of more than one extremity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 8.00(C)(1) (extensive skin lesions). The record does not support a finding of such serious limits for the requisite duration especially despite continuing treatment. The ALJ did not err in failing to find plaintiff met Listing 8.06.[3]

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is affirmed, and this action is dismissed.

DATED this 18th day of August, 2020.

/s/ Jolie A. Russo
JOLIE A. RUSSO
United States Magistrate Judge

---

[3] Plaintiff also suggests the ALJ erred in making a finding of medical equivalence without articulating how the record establishes medical equivalency. However, the ALJ did not make such a finding and is not required articulate specific evidence supporting a finding an impairment does not medically equal a listed impairment. See Soc. Sec. Ruling (SSR) 17-2p, 2017 WL 3928306 at *4 (The adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairments do not medically equal a listed impairment).

Page 7 – OPINION AND ORDER